# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

THOMAS BECHER,
individually and on behalf of those
similarly situated,

    Plaintiff,

v.

UNITED HEALTHCARE
SERVICES, INC., et al.,

    Defendants.

Case No. 18-4009-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiff Thomas Becher, individually and on behalf of those similarly situated, filed this lawsuit against defendants United Healthcare Services, Inc. ("United"), The Prudential Insurance Company of America ("Prudential"), and AARP. Plaintiff asserts that he and his wife, Jerri Becher, purchased an insurance policy from an AARP agent, and that this policy insured both of them. Since purchasing this policy, plaintiff alleges, both Prudential and United have underwritten the policy. Plaintiff's Complaint asserts that defendants breached the insurance policy when United refused to indemnify him for a hospital visit. Now, all defendants, together, ask the court to dismiss plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 14. They argue dismissal is proper because plaintiff was not an insured party under the policy.

Plaintiff has filed a Response (Doc. 22), and defendants have filed their Reply (Doc. 23). But, plaintiff asks the court to strike defendants' Reply because it includes a copy of what defendants assert is the application form for the insurance policy at issue. Doc. 24. This

application, plaintiff alleges, falls outside the collection of materials that a federal court can consider on a motion to dismiss. The court discusses this issue first, and then addresses the merits of defendants' Motion to Dismiss. Ultimately, the court concludes that plaintiff has stated plausible claims and denies defendants' Motion to Dismiss.[1]

I.  **Motion to Strike**

Defendants attached the application form for the insurance policy at issue to their Reply in support of their Motion to Dismiss. Doc. 23-2. Plaintiff asks the court to strike defendants' Reply. While the court agrees with plaintiff that it cannot consider the application form when ruling on a 12(b)(6) motion, the court declines to strike defendants' Reply in its entirety. Instead, for reasons explained below, the court declines to consider the application form and any argument relying on it.

When considering a motion to dismiss under Rule 12(b)(6), the court generally "may not look beyond the four corners of the complaint." *Am. Power Chassis, Inc. v. Jones*, No. 13-4134-KHV, 2017 WL 3149291, at *3 (D. Kan. July 25, 2017) (citing *Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 475 F. Supp. 2d 1092, 1097 n.3 (D. Kan. 2007)). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Geer v. Cox*, 242 F. Supp. 2d 1009, 1016 (D. Kan. 2003) (internal quotation marks and citation omitted). Otherwise, to consider a matter outside the pleadings, the court must convert the motion to dismiss into one for summary judgment under Federal Rule of Civil Procedure 56. *Id.*

---

[1] Defendants request oral argument on their Motion to Dismiss. Doc. 14 at 1. D. Kan. Rule 7.2 provides, "The court may set any motion for oral argument or hearing at the request of a party or on its own initiative." After considering the parties' written submissions, the court concludes that they explain the parties' positions effectively. The court thus concludes that oral argument would not assist its work, and it denies defendants' request.

at 1015–16 ("Reversible error may occur . . . if the district court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment."). At the motion to dismiss stage, the court cannot properly consider extrinsic evidence that isn't central to a plaintiff's claim. This is the rule even if the extrinsic evidence is central to the defendant's "theories of defense." *Capital Sols., LLC v. Konica Minolta Bus. Sols. USA, Inc.*, Nos. 08-2027-JWL, 08-2191-JWL, 2008 WL 3538968, at *3 (D. Kan. Aug. 11, 2008).

The court agrees that the insurance policy itself is a document that is central to plaintiff's claim. Indeed, plaintiff already has attached the policy to the Complaint. But defendants ask the court also to consider the application form that led to the insurance policy. The court may not do so without converting the motion into a summary judgment motion. The application does not fall within any of the three exceptions recognized by the Tenth Circuit that permit a district court to consider a matter outside the pleadings without converting the motion into one seeking summary judgment. The Circuit has recognized the following three exceptions to the four corners of the complaint rule: (1) "documents that the complaint incorporates by reference"; (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity"; and (3) matters "which a court may take judicial notice." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (internal quotation marks and citations omitted).

Defendants here do not argue that the application qualifies under any of the three exceptions. Doc. 25 at 1–3. Instead, defendants argue that the court should consider the application as part of the policy based on Kansas law. *Id.* at 3 (citing *Lightner v. Centennial Life Ins. Co.*, 744 P.2d 840, 843 (Kan. 1987) (holding that "[t]he application for insurance is to be construed with the policy as a whole to determine the parties' intent")). Plaintiff responds,

3

arguing that an application is part of the policy only when the insurer meets certain requirements. *See* Doc. 26 at 1 (citing Kan. Admin. Regs. § 40-4-12 (requiring insurer to attach the application and disclose the following: "This application is a part of the policy and the policy was issued on the basis that answers to all questions and the information shown on the application are correct and complete.")); *see also* Kan. Stat. Ann. § 40-2205 (providing that "[t]he insured shall not be bound by any statement made in an application for a policy unless a copy of such application is attached to or endorsed on the policy when issued as a part thereof"). Here, the facts that the court properly can consider on a motion to dismiss do not show that the court can construe the application at issue as part of the insurance policy.

With a different showing, the issue whether the court could consider the application for insurance would pose an interesting question. But the Kansas Administrative Regulation above and several Kansas case authorities require insurers to comply with that regulation before an application is part of an insurance policy. Here, nothing establishes that the application form qualifies for one of the limited exceptions to the rule against considering matters outside the pleadings. Also, defendants have not demonstrated that they complied with the Kansas regulation. The court thus cannot consider the application form as part of plaintiff's policy and, subsequently, when deciding defendants' Motion to Dismiss.

The court also declines to convert defendants' Motion into a motion for summary judgment. Several reasons support this outcome. First, none of the parties ask the court to convert the Motion in this fashion. *See Geer*, 242 F. Supp. 2d 1009, 1016 (D. Kan. 2003). Second, defendants "filed their motion at an early stage" in this case. *See Ledbetter v. Bd. of Cty. Comm'rs*, No. 00-2180-KHV, 2001 WL 705806, at *2 (D. Kan. May 31, 2001) ("Because defendants filed their motion at an early stage of the proceedings and discovery is not scheduled

4

to close [for more than one month], the Court decline[d] to consider evidence outside the pleadings."). Third, the court also "has not notified the parties that it will apply a summary judgment standard." *Grogan v. O'Neil*, 292 F. Supp. 2d 1282, 1292 (D. Kan. 2003). Fourth, defendants' Motion does not provide "a concise statement of material facts," as D. Kan. Rule 56.1 requires for summary judgment motions. *Id.* Together, these reasons convince the court that it should not convert defendants' motion into one seeking summary judgment.

Finally, plaintiff asks the court to strike defendants' Reply in its entirety. Rather than striking the whole Reply, the court exercises its discretion and simply will disregard the application form and all arguments that reference it. *See Rezac Livestock Comm'n Co. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1163–64 (D. Kan. 2017) (concluding that a bank check was a matter outside the pleadings and, after declining to convert the motion to dismiss into a motion for summary judgment, the court disregarded only the check when considering a motion to dismiss). The court thus grants plaintiff's Motion to Strike (Doc. 24) in part and denies it in part.

## II. Defendants' Motion to Dismiss (Doc. 14)

The court now turns to the substance of defendants' Motion to Dismiss (Doc. 14). Its analysis begins by identifying the operative facts governing defendants' motion.

### A. Facts

The following facts come from plaintiff's Complaint (Doc. 1). The court accepts facts asserted by the Complaint as true and views them in the light most favorable to plaintiff. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

5

Around April 1, 1993, plaintiff and his wife, Jerri Becher, met with an AARP agent and purchased an insurance policy titled "Plan B8." Plan B8 policies provide fixed daily benefits for specified hospital stays, intensive care unit stays, and outpatient hospital care (collectively called "covered events"). The Plan B8 policy was issued on April 1, 1993.

In the mid- to late-1990s, United began underwriting and administrating Plan B8 policies. Prudential underwrote and administered Plan B8 policies when it issued the policy at issue here. In the section of the Plan B8 policy titled, "Who is Covered," the policy provides: "The person or persons (the member and the spouse of the member) named above are covered from the Effective Date shown if the required premium contribution has been paid when due. The term **you** refers individually to each person named." Doc. 1-1 at 1. "Mrs. Jerri Becher" is named under the heading "issued to." *Id.* These provisions appeared in Doc. 1-1—the document plaintiff attached to his Complaint.

# CERTIFICATE OF INSURANCE
## AARP Group Health Insurance Program
## AARP's Group Hospital Plan

Issued to:

MRS JERRI BECHER
6420 SW 26TH CT
TOPEKA, KS 66614

≈AARP≈

The Prudential
B8 1-91
GH - 1075

ACCOUNT# - 30009683-1    EFFECTIVE  04-01-93
30683053002  B8                       0000429

The Effective Date above is subject to payment of your first premium contribution.

The Prudential Insurance Company of America, Fort Washington, Pennsylvania, has issued Group Policy No. G-36000-2 to the **TRUSTEES OF THE AARP INSURANCE PLAN**, Washington, D.C. The benefits described in this Certificate are subject to the conditions, exceptions, and other provisions under that policy. The Group Policy provides insurance for members of the **AMERICAN ASSOCIATION OF RETIRED PERSONS (AARP)**.

Benefits will be provided for the following types of covered stays and care listed below:

- **HOSPITAL STAYS**
- **INTENSIVE CARE UNIT STAYS**
- **OUTPATIENT HOSPITAL CARE**

### THIS IS NOT A MEDICARE SUPPLEMENT PLAN

**THIS CERTIFICATE PROVIDES ONLY LIMITED BENEFITS AND DOES NOT MEET THE STANDARDS OF A MEDICARE SUPPLEMENT CERTIFICATE.** If you are eligible for Medicare, review the Medicare Supplement Buyer's Guide available from Prudential.

### GUIDE TO YOUR CERTIFICATE

Who is Covered .................... 1
What is Covered ................... 2
What is Not Covered ............... 2
What Certain Terms Mean ........... 3
When You Have a Claim ............. 4
When Your Coverage Stops .......... 5
Benefits After Your
  Coverage Stops .................. 5
General Matters ................... 5
Schedule of Benefits .............. 6

### PLEASE READ YOUR CERTIFICATE CAREFULLY

### WHO IS COVERED

The person or persons (the member and the spouse of the member) named above are covered from the Effective Date shown if the required premium contribution has been paid when due. The term **you** refers individually to each person named.

### 30 DAY RIGHT TO EXAMINE THE CERTIFICATE

If you decide you do not want this coverage, you may return the Certificate within 30 days after receiving it. Upon receipt, your insurance will be deemed void from its Effective Date and any monthly payment paid will be returned to you. The Certificate, together with a written request for such withdrawal, must be sent to: AARP Correspondence Unit, P.O. Box 7000, Allentown, PA 18175-0400.

GH - 1075                    1                    (1075-1)
                                                  B8 1-91

From April 1993 to about October 2004, plaintiff and his wife paid a monthly premium of $36.25 in exchange for coverage under Plan B8. And from November 2004 to January 2016, plaintiff and his wife paid a monthly premium of $34.25. Those premiums added up to more than $9,500.

On January 20, 2016, plaintiff visited a hospital on an inpatient basis and was released the next day. After he was released, plaintiff filed a claim with United, the claims administrator, requesting $69 as indemnification for the hospital stay.[2] Around March 21, 2016, United denied plaintiff's claim because, the Complaint asserts, plaintiff's wife's name was the only name that appeared on the face of the Certificate of Insurance. So, plaintiff contends, United concluded that Plan B8 did not cover plaintiff.

Defendants now ask the court to dismiss plaintiff's Complaint under Rule 12(b)(6) on the same grounds—*i.e.*, the policy does not cover plaintiff. Doc. 14.

---

[2] The crux of the named plaintiff's immediate dispute arises from denial of a $69 claim for indemnification. Doc. 1 at 4 (Compl. ¶ 22). The Complaint claims that 28 U.S.C. § 1332(d)—a provision enacted as part of the Class Action Fairness Act—confers subject matter jurisdiction over his claims. Doc. 1 at 3 (citing 28 U.S.C. § 1332(d)). It alleges that the "amount in controversy" in the putative class claims exceeds $5 million and at least one member of that class is diverse from one defendant. *Id.* (Compl. ¶ 9).

Our Circuit has explained that the CAFA's "in controversy" term "traces it lineage all the way back to the Federal Judiciary Act of 1789" and, possibly, beyond. *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 911 (10th Cir. 2016) (Gorsuch, J.). Also, the Circuit has endorsed a relatively modest test for showing—at the pleading stage, anyway—the requisite "in controversy" amount. *Id.* at 912. Namely, this term

> has never required a party seeking to invoke federal jurisdiction to show that damages "*are* greater" or will *likely* prove greater "than the requisite amount" specified by the statute. Instead, the term has required a party seeking federal jurisdiction to show only and much more modestly that "a fact finder *might* legally conclude" that damages exceed the statutory amount. As the Supreme Court has explained, to justify dismissal under this standard "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."

*Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)) (other citations omitted).

In short, the court is satisfied that the Complaint makes sufficient allegations to satisfy this modest standard at this stage of the case. The court does not prejudge any future jurisdictional concerns, however.

## B. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a Complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* at 679 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When assessing whether a plaintiff has stated a plausible claim, the court must assume that the complaint's factual allegations are true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S.

9

at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

## C. Analysis

Defendants contend that the insurance policy at issue did not cover plaintiff because the policy didn't name him as an insured. Indeed, only plaintiff's wife, Jerri Becher, is named on the policy. But plaintiff asserts that he is covered because the coverage provision includes the language, "(the member and the spouse of the member)." Doc. 1-1 at 1. This motion thus turns on whether plaintiff's interpretation of the insurance contract at issue here is plausible.

### 1. Choice of Law

First, the court must determine which state's contract law to apply to determine whether plaintiff's breach of contract and declaratory relief claims are plausible. Plaintiff has pleaded facts sufficient to establish that the court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(d). *See* Doc. 1 at 2–3. "[A] federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Ace Prop. & Cas. Ins. Co. v. Superior Boiler Works, Inc.*, 504 F. Supp. 2d 1154, 1158 (D. Kan. 2007); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This court is in Kansas, of course, so it applies Kansas choice of law provisions.

When a contractual dispute contests the "substance of [a party's contractual] obligation," Kansas courts apply the choice of law rule known as *lex loci contractus*, or "the law of the state where the contract is made." *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (applying Kansas law). And, in insurance policy disputes, "Kansas courts generally find that the contract is made in the state where the policy is delivered." *PetroSantander (USA), Inc. v. HDI Glob. Ins. Co.*, No. 16-CV-01320-EFM-GLR, 2018 WL 1706516, at *3 (D. Kan. Apr. 9, 2018) (applying

10

Kansas law). Here, Prudential delivered the policy at issue to the Topeka, Kansas, address listed on the Certificate of Insurance. Doc. 1-1 at 1. So, the court applies Kansas contract law.

### 2. Contract Interpretation

#### a. Kansas law

Kansas law classifies contract interpretation and construction as issues of law that the court must decide. *Kindergartners Count, Inc. v. DeMoulin*, 249 F. Supp. 2d 1233, 1242 (D. Kan. 2003); *see also AMCO Ins. Co. v. Beck*, 929 P.2d 162, 165 (Kan. 1996). "The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction." *Waste Connections of Kan., Inc. v. Ritchie Corp.*, 298 P.3d 250, 264 (Kan. 2013) (internal quotations omitted).

To determine whether the contract's language is ambiguous, a court first must apply "pertinent rules of interpretation to the face of the instrument" and conclude that they "leave[] it genuinely uncertain which one of two or more meanings is the proper meaning." *Liggat v. Emp'rs Mut. Cas. Co.*, 46 P.3d 1120, 1125 (Kan. 2002) (internal quotations omitted). If, after applying normal rules of construction, the court still finds the relevant contract provision is ambiguous, the court then may "construe the ambiguities against" the drafter. *First Nat'l Bank of Olathe v. Clark*, 602 P.2d 1299, 1303 (Kan. 1979).

"To determine whether an insurance contract is ambiguous . . . the court must view the language as to what a reasonably prudent insured would understand the language to mean." *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1174 (D. Kan. 2008) (applying Kansas law). "This does not mean that the policy should be construed according to the insured's uninformed expectations of the policy's coverage." *Id.* If the policy "contains language of

11

doubtful or conflicting meaning based on a reasonable construction of [its] language," the policy is ambiguous. *Id.* Courts should give the policy's terms "the 'natural and ordinary meaning they convey to the ordinary mind,' unless contrary intent is shown." *Id.* at 1175 (quoting *Harmon v. Safeco Ins. Co. of Am.*, 954 P.2d 7, 9 (Kan. Ct. App. 1998)).

### b. The insurance contract

Here, defendants invoke five rules of contract interpretation trying to show plaintiff has not alleged facts sufficient to create a plausible inference that the policy covered him. Doc. 15 at 8–9; Doc. 23. They are: (1) reading the contract's plain language; (2) looking to the last antecedent rule; (3) harmonizing contract provisions; (4) avoiding superfluity; and (5) avoiding absurd results. *Id.* The court summarizes and addresses defendants' arguments in the following paragraphs.

When it describes who is covered by the policy, the policy provides: "The person or persons (the member and the spouse of the member) named above are covered from the Effective Date shown if the required premium contribution has been paid when due. The term **you** refers individually to each person named." Doc. 1-1 at 1. Plaintiff does not argue that he is an individual "named above" on the policy; rather, his Complaint theorizes that the words inside the parenthetical—"the member and the spouse of the member"—presumptively cover him under the policy. In the alternative, the Complaint alleges, the insurance policy is ambiguous, and its content must be construed against the drafters—here, the defendants.

Defendants first argue that the parenthetical, given its plain meaning, merely modifies the person or persons named on the policy. They assert that the parenthetical provides an option for coverage rather than a requirement for who must be covered. Defendants contend that plaintiff has not alleged plausibly that the insurance policy covered him because he was not named as an

12

insured under the policy. Conversely, as discussed above, plaintiff argues that the plain meaning of the parenthetical language presumptively covers him as an insured.

Next, defendants invoke the last antecedent rule. The rule provides:

> In construing statutes, qualifying words, phrases and clauses are ordinarily confined to the last antecedent, or to the words and phrases immediately preceding. The last antecedent, within the meaning of this rule, has been regarded as the last word which can be made an antecedent without impairing the meaning of the sentence.

*Barten v. Turkey Creek Watershed Joint Dist. No. 32*, 438 P.2d 732, 744–45 (Kan. 1968). Defendants argue that the parenthetical language, "the member and the spouse of the member," describes the word "persons"—it clarifies the word "persons." Doc. 15 at 10. Plaintiff responds, contending that applying the last antecedent rule would produce an absurdity. Plaintiff asserts that if the word "persons" is described by the following parenthetical—"the member and the spouse of the member"—the policy language would be redundant. Doc. 22 at 5.

Third, the parties agree that Kansas law requires the court to "harmonize" contract language by "not constru[ing] . . . [a contract's] paragraphs or clauses so as to make them conflict with each other," but rather, the court must "construe them so as to give to each and all their terms full force and operation." *Cobb, Stribling & Co. v. Ins. Co. of N. Am.*, 17 Kan. 492, 497–98 (1877). Defendants assert here that the policy uses the words "you" and "your" more than 80 times, and it expressly defines "you" as the individual named in the policy—in this case, they argue, Jerri Becher and Jerri Becher alone. Doc. 15 at 12–13. But plaintiff contends that the parenthetical language—"the member and the spouse of the member"—and the requirement that the policy itself must identify the insured parties are not in harmony with one another. Doc. 22 at 7. Plaintiff thus argues that the court should interpret the words in the parenthetical to cover him independently under the policy.

13

Fourth, defendants argue interpreting the parenthetical language as a definition that presumptively covers plaintiff under the policy would render other provisions of the policy superfluous. For example, defendants contend, the policy provides that "[i]f the member dies, the spouse, if covered under the Group Policy, may elect to continue coverage by paying the required premium contribution." Doc. 1-1 at 5. Defendants argue that, if the parenthetical language were read to mandate coverage of the named insured's spouse, regardless of whether the spouse was named on the policy, the policy language "if covered under the Group Policy" would be unnecessary. But plaintiff asserts that the policy covers spouses presumptively with the words in the parenthetical, and a spouse would be entitled to continued coverage automatically under the policy.

Finally, the parties agree that Kansas law favors avoiding contract interpretations that "vitiate the purpose or reduce the terms of the contract to an absurdity." *First Nat'l Bank of Olathe v. Clark*, 602 P.2d 1299, 1303 (Kan. 1979). Defendants then argue that plaintiff's interpretation of presumptive coverage "essentially imposes on the insurer a roving mandate to insure any spouse of any member, requiring an insurer to provide coverage without knowing who it is covering and without collecting a premium from all individuals in the risk pool." Doc. 15 at 15–16. Conversely, plaintiff argues, the policy could specify that it covers only named insureds, but, instead, it includes the redundant parenthetical providing that both the member and the spouse of the member may be covered.

### c. Defendants' Motion to Dismiss (Doc. 14)

Kansas law allows a beneficiary of an insurance policy to bring a breach of contract claim against the issuing insurer. *Wunschel v. Transcontinental Ins. Co.*, 839 P.2d 64, 69–70 (Kan. Ct. App. 1992) (citing *Cornwell v. Jespersen*, 708 P.2d 515 (Kan. 1985)). Such a claim

14

requires the beneficiary to assert facts capable of supporting a finding or inference of five elements. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). Those five requirements for a prima facie claim are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Id.*

Here, the court can draw a "reasonable inference" that plaintiff is entitled to recover for defendants' alleged breach of the insurance contract. *See Iqbal*, 556 U.S. at 678. Plaintiff has alleged in his Complaint more than "conclusory" elements of claims for breach of contract or declaratory relief. *See Bixler*, 596 F.3d at 756. Specifically, plaintiff plausibly interprets the parenthetical language, "the member and the spouse of the member," to provide that he is included, presumptively, as an insured party. The court can draw a reasonable inference that the policy covers plaintiff because the words in the parenthetical would be redundant if defendants: (1) required the policy to name both spouses expressly for coverage to apply; but (2) also included language that already extends coverage to "[t]he person or persons (the member and the spouse of the member) named" in the contract. Doc. 1-1 at 1. Plaintiff has alleged facts sufficient to support a plausible inference that the parenthetical language covers him. Also, he has pleaded sufficient facts to allege plausibly, at a minimum, that the policy is ambiguous about the scope of its coverage. Given that conclusion, the policy must be construed against the drafters, *i.e.*, the defendant insurers.

Plaintiff alleges that Prudential underwrote and administered Plan B8 policies when it issued the policy in question. He alleges, on information and belief, that United began underwriting and administrating Plan B8 policies in the mid- to late-1990s. Also, plaintiff

15

alleges that AARP acted as an agent of both United and Prudential, and vice versa. Doc. 1 at 2. He directs the court to the insurance policy document: the first page contains both AARP and Prudential's logos. Doc. 22 at 10. These alleged facts, plaintiff contends, are "sufficient . . . to meet the definition of an implied agency under Kansas law, since the appearance of the Prudential and AARP logos is intended to give the viewer the perception that these organizations are behind the Policy." *Id.* Finally, plaintiff argues that discovery is required to determine whether one or more of the defendants should be dismissed.

The court agrees with plaintiff. These allegations go beyond a "conclusory" recitation of the elements of a breach of contract claim. And they do so for each of the three defendants. *See Bixler*, 596 F.3d at 756. Plaintiff plausibly has alleged that: (1) each defendant held itself out as a party involved in the insurance coverage at issue; and (2) acted within the scope of an agency relationship when it denied plaintiff's insurance claim. Plaintiff's Complaint sufficiently states a breach of contract claim against all three defendants. The court thus denies defendants' Motion to Dismiss this claim.

Finally, plaintiff seeks declaratory relief to establish his rights under the policy. Doc. 1 at ¶¶ 56–58. Plaintiff alleges that the policy, at a minimum, is ambiguous and should be interpreted against defendants. *Id.* at ¶ 56. And plaintiff seeks a declaration that the policy covers spouses of individuals named on the policy document. *Id.* at ¶ 58. Plaintiff asserts, based on the contract interpretation grounds discussed above, that he is covered under the policy, and defendants' actions continue to harm him. Doc. 22 at 9. Plaintiff also argues that defendants are "large, sophisticated actors" who can affect many individuals in Kansas and beyond. *Id.* He and the putative class seek a declaration of their rights under the policy because there is an actual controversy with defendants about the policy's coverage terms. *Id.*; *see also* Doc. 1 at ¶¶ 56–58.

Courts can "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Plaintiff plausibly has alleged that the policy language presumptively covers him as an insured, or, at minimum, that the language is ambiguous and should be interpreted against the defendant drafters. Plaintiff has pleaded a viable claim for declaratory relief, and the court thus denies defendants' Motion to Dismiss this claim.

### III. Conclusion

For the reasons explained above, the court grants plaintiff's Motion to Strike (Doc. 24) in part and denies it in part, as set forth in this Order. The court also denies defendants' Motion to Dismiss (Doc. 14).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Thomas Becher's Motion to Strike (Doc. 24) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendants United Healthcare Services, Inc., The Prudential Insurance Company of America, and AARP's Motion to Dismiss (Doc. 14) is denied.

**IT IS SO ORDERED.**

**Dated this 20th day of March, 2019, at Kansas City, Kansas.**

                                                    **s/ Daniel D. Crabtree**
                                                    **Daniel D. Crabtree**
                                                    **United States District Judge**